**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION**

**DEBORAH GOODWIN**                                                           **PLAINTIFF**

**V.**                                              **CIVIL ACTION NO.:** 4:20-CV-061-DMB-JMv

**FARMERS GRAIN TERMINAL, INC.; AND
MITCH HOPKINS, INDIVIDUALLY**                                  **DEFENDANTS**

**COMPLAINT
<u>JURY TRIAL DEMANDED</u>**

**COMES NOW** the Plaintiff, Deborah Goodwin, by and through her counsel, Watson & Norris, PLLC, and files this action to recover damages for a violation of her rights under the Age Discrimination in Employment Act of 1967, as amended, (ADEA), violation of the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, (COBRA), and breach of contract, against Defendant Farmers Grain Terminal, Inc, and for tortious interference against Mitch Hopkins, Individually. In support of this cause, the Plaintiff would show unto the Court the following facts to-wit:

**<u>PARTIES</u>**

1. Plaintiff, Deborah Goodwin, is a fifty-two (52) year old adult female citizen of Warren County, Mississippi, who is over the age of forty (40) and thus is a covered "employee" as defined by the ADEA. By virtue of Defendant terminating her employment, Plaintiff experienced a "qualifying event" as defined by COBRA.

2. Defendant, Farmers Grain Terminal, Inc., is a Mississippi Corporation that may be served through its registered agent: Steve Nail, 1977 Harbor Front Industrial Park, Greenville, Mississippi 38702. Defendant is person engaged in an industry affecting commerce who has twenty or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year and thus, is a covered

1

"employer" as defined by both the ADEA and COBRA.

3.      Defendant, Mitch Hopkins, individually, may be served with process at his place of employment: Farmers Grain Terminal, Inc., 330 Farmers Grain Road, Tallulah, Louisiana 71282.

## JURISDICTION AND VENUE

4.      This court has federal question and civil rights jurisdiction for a cause of action arising under the ADEA.

5.      This Court has personal and subject matter jurisdiction over the Defendants and venue is proper in this Court.

6.      Plaintiff timely filed her Charge of Discrimination with the EEOC on November 6, 2019, a true and correct copy of which is attached as Exhibit "A." After investigation, the EEOC issued a Notice of Right to Sue on January 14, 2020, a true and correct copy of which is attached as Exhibit "B." Plaintiff timely files this cause of action within ninety (90) days of receipt of her Notice of Right to Sue.

## STATEMENT OF THE FACTS

7.      Plaintiff is a 52-year-old female resident of Warren County, Mississippi.

8.      Plaintiff was hired on at Farmers Grain Terminal, initially as an Office Manager at the Waterproof, Louisiana location from February 2005 to June 2010.

9.      After that, Plaintiff was transferred to the Mound, Louisiana location, where she worked as a Scale Room Worker from June 2011 to September 2019.

10.     In all her time working for the Defendant, Farmers Grain Terminal, Inc., Plaintiff was never written up or received any disciplinary actions against her.

11.     On September 10, 2019, a meeting was held to address ongoing conflict between Plaintiff and employee Arla Cox.

2

12. In April of 2019, Cox had asked Plaintiff if she would pay her Netflix bill so her girlfriend's mother could watch a show. She was in poor health and stayed in bed most of the time. She had come to stay with Cox and her girlfriend Cassie for a couple of days.

13. At this point Plaintiff trusted her co-worker Cox so she just took a picture of her debit card and texted the picture to her and told her to make sure she deleted it after she paid the Netflix bill.

14. A couple of months later, Plaintiff received an alert that her bank account was overdrawn.

15. Plaintiff proceeded to review the recent transactions on her account.

16. Plaintiff discovered that her co-worker Cox had improperly used Plaintiff's debit card to also pay other bills and buy groceries, gas, etc.

17. It is apparent that Cox knew she had made these unauthorized charges, but she did not tell Plaintiff.

18. Instead, Cox waited until Plaintiff discovered the unauthorized charges on her debit card.

19. When Plaintiff questioned her co-worker about the charges, Cox responded that it was "an accident."

20. At the time, Plaintiff did not think Cox would intentionally make the unauthorized charges, so Plaintiff believed it was an accident and was almost over it.

21. Cox borrowed money from Plaintiff frequently and would work on paying it back.

22. In August of 2019, Cox informed Plaintiff that if she could pay off her existing loan with Defendant's 401K plan, she could then borrow enough money to pay Plaintiff off and get caught up on her bills.

23. Plaintiff agreed to this plan only because Cox was going to pay Plaintiff back all of the money that Cox owed her.

24. Cox promised to pay all debts owed to Plaintiff with the loan.

25. Based upon this promise, Cox borrowed additional money from Plaintiff before the loan check came in to pay her phone bill and to buy food.

26. Brandi Adams, the similarly situated substantially younger individual who Defendant eventually replaced Plaintiff with, is a witness to these conversations.

27. Cox had the loan check sent via FedEx to her house instead of work. Cox then cashed the check instead of giving it to Plaintiff to deposit into her account.

28. Cox then gave Plaintiff only $1,000.00 cash; however, this was not the agreement.

29. When Plaintiff confronted her, Cox became irate and went ballistic because Plaintiff told Cox that Plaintiff wanted Cox to repay everything that Cox owed Plaintiff like Cox said she was going to do.

30. From then on, Cox had a negative attitude toward Plaintiff and made it very unpleasant to work around her.

31. After all this happened, Plaintiff became suspicious that the previous unauthorized bank card usage was not "an accident" as Cox had previously claimed.

32. After looking into this matter further, Plaintiff found that her pin had to be manually entered for each transaction Cox made, so Cox knew she was using Plaintiff's card for each unauthorized transaction.

33. Plaintiff then requested that Cox pay her all the money that was owed to her or that she was going to press charges.

34. Cox responded by telling lies to people at work trying to make Plaintiff look

4

bad and accused Plaintiff of doing "illegal" things so that Plaintiff would not file charges against her.

35. Cox then proceeded to cause even more friction at work.

36. Plaintiff could not ask Cox to do anything, tell Cox that she was doing anything wrong, or even ask Cox to do her work properly.

37. When Plaintiff attempted to communicate with Cox at work, she would start screaming and yelling.

38. This series of events led to Mitch Hopkins, the General Manager, stating that "we have to get along and work together" and set up a meeting for September 10, 2019.

39. The night before the meeting, Cox sent a text to Goodwin's boyfriend, David Bourgeois, on September 9, 2019 and called him.

40. The text was not nice and during the phone call, Cox told Bourgeois that Plaintiff "was on drugs;" "that [Plaintiff] hated being with him;" "that [Plaintiff] wished she had never bought the house with him;" and "that Plaintiff was miserable and looked for any reason to go anywhere to avoid being around him."

41. The text and phone call made Bourgeois very upset.

42. Bourgeois had tears in his eyes when Plaintiff left for work that next morning for the meeting.

43. During the meeting, Hopkins, told Plaintiff, Cox, and the Part Time Season Worker Brandi Adams that they all needed to "be on the same team, work together, and get along."

44. During the meeting, Plaintiff asked Hopkins and Stuart Moberly, District Manager, if they wanted to read the text from Cox, they each responded no.

45. After the meeting as Hopkins and Plaintiff were walking down the hall toward

5

the scale room, Plaintiff said to Hopkins: "I have to go talk to David about this stupid text. He is very upset."

46. Hopkins replied "Well, Ok" in a sarcastic way.

47. Plaintiff then stated: "do you want to see crap she texts?"

48. Hopkins said "no."

49. Plaintiff kept walking and left to go talk to Bourgeois because she knew he was extremely upset about this situation. In addition, Plaintiff had not clocked in for work that day.

50. The next day, when Plaintiff arrived for work, Hopkins physically blocked her from exiting her vehicle.

51. Hopkins then stated to Plaintiff, "Why are you here? You quit."

52. Plaintiff replied that she most definitely had not quit.

53. Hopkins; however, continued to insist that Plaintiff had quit, so eventually Plaintiff had no choice but to assume he was terminating her employment by denying her entry to the facility, and she left.

54. Defendant Hopkins later told Jake Wallace that Plaintiff taking off to check on Bourgeois "really rubbed him the wrong way" and "it pissed him off."

55. After Defendant terminated Plaintiff, Defendant replaced Plaintiff with a substantially younger female, Brandi Adams (36 years old).

56. Plaintiff filed for unemployment; however, Defendant contested her application.

57. Defendant falsely stated in its response to Plaintiff's unemployment claim that Plaintiff "walked off the job" when she clearly did not.

58. Hopkins had given Plaintiff his express permission to leave to check on

6

Bourgeois.

## CAUSES OF ACTION

### COUNT I: VIOLATION OF THE ADEA – AGE DISCRIMINATION

59. Plaintiff alleges and incorporates all averments set forth in paragraphs 1 through 58 above as if fully incorporated herein.

60. Defendant, Farmer's Grain Terminal, Inc.'s actions constitute intentional discrimination on the basis of age in violation of the ADEA. Specifically, Plaintiff is over the age of 40 and was more than qualified for her position with Defendant. In addition, Defendant replaced Plaintiff with Brandi Adams who is substantially younger than Plaintiff.

61. The unlawful actions by Defendant, Farmer's Grain Terminal, Inc., complained of above were willful, intentional, malicious, and taken in reckless disregard of the statutory right of Plaintiff.

### COUNT II: VIOLATION OF COBRA

62. Plaintiff incorporates paragraphs 1 through 61 above as though specifically set forth herein and alleges that:

63. Defendant, Farmer's Grain Terminal, Inc.'s actions of failing to give Plaintiff proper notice pursuant to COBRA constitute a direct violation of COBRA, 29 U.S.C. § 1162, *et seq*.

64. As a direct and proximate result of the acts and omissions of Defendant, Farmer's Grain Terminal, Inc., described above, Plaintiff has suffered lost wages and benefits and other pecuniary loss as well as deep pain, humiliation, anxiety, and emotional distress.

### COUNT III: BREACH OF CONTRACT

65. Plaintiff re-alleges and incorporates all averments set forth in paragraphs 1

through 64 above as if fully incorporated herein.

66. Defendant, Farmer's Grain Terminal, Inc., acting by and through its agents and employees, did knowingly, willfully, and intentionally breach the terms and conditions it set forth in its Employee Handbook.

67. Defendant disseminated an Employee Handbook to Plaintiff which contains a "Work Rules & Disciplinary Policy" on page 9.

68. Defendant's Employee Handbook does not contain a disclaimer preserving the "at-will" relationship between Defendant and Plaintiff. As such, it creates a contractual relationship between Defendant and Plaintiff.

69. Rule 9 addresses "leaving plant during work shift without permission." For a first offense, as in the situation involving Plaintiff, the rule states that the penalty for a first offense is a "Written warning." A copy of Defendant's Work Rules and Disciplinary Policy is attached as Exhibit "C."

70. Defendant breached its own Policy by terminating Plaintiff for an alleged first offense. Plaintiff maintains that she was given permission to leave by Defendant Hopkins.

71. As such, Defendant's actions constitute a breach of contract.

72. As direct and proximate result of Defendant, Farmer's Grain Terminal, Inc.'s breach, Plaintiff suffered and continues to suffer lost earnings and benefits, emotional pain, suffering, professional and personal embarrassment, humiliation, loss of enjoyment of life, and inconvenience.

**COUNT VI: TORTIOUS INTERFERENCE AGAINST MITCH HOPKINS, INDIVIDUALLY**

73. Plaintiff re-alleges and incorporates all averments set forth in paragraphs through 72 above as if fully incorporated herein.

74. Plaintiff had an employment relationship with Defendant Farmers Grain

Terminal, Inc. and Defendant Mitch Hopkins was aware of Plaintiff's employment relationship with Defendant Farmers Grain Terminal, Inc.

75. Defendant Mitch Hopkin's actions were malicious when he tortiously interfered in Plaintiff's employment relationship with Defendant Farmers Grain Terminal, Inc.

76. As such, Plaintiff is seeking an award of compensatory damages in an amount to be determined by the jury to fully compensate her for Defendant Mitch Hopkins' actions in tortiously interfering with her employment relationship with Defendant Farmers Grain Terminal, Inc.

77. In addition, Defendant Mitch Hopkins's actions were done maliciously with the intent to cause Plaintiff professional and personal injury.

78. As such, Plaintiff is entitled to an award of punitive damages against Defendant Mitch Hopkins in an amount to be determined by the jury.

## **PRAYER FOR RELIEF**

**WHEREFORE PREMISES CONSIDERED**, Plaintiff respectfully prays that upon hearing of this matter by a jury, the Plaintiff be granted the following relief in an amount to be determined by the jury:

1. Back pay;
2. Reinstatement or front pay in lieu of reinstatement;
3. Lost benefits;
4. Liquidated damages;
5. Compensatory damages;
6. Punitive damages;
7. Pre-judgment and post-judgment interest;
8. A tax gross-up and all make whole relief;
9. Attorney's fees;
10. Costs and expenses; and
11. Any other relief to which Plaintiff may be properly entitled under the ADEA, COBRA and Mississippi law.

THIS the 7th day of April 2020.

        Respectfully submitted,

        DEBORAH GOODWIN,
        PLAINTIFF

        By: /s/ Louis H. Watson, Jr.
        Louis H. Watson, Jr. (MB# 9053)
        Nick Norris (MB#101574)
        Attorneys for Plaintiff

OF COUNSEL:

WATSON & NORRIS, PLLC
1880 Lakeland Drive, Suite G
Jackson, Mississippi 39216-4972
Telephone: (601) 968-0000
Facsimile: (601) 968-0010
louis@watsonnorris.com
nick@watsonnorris.com